## JUSTICE MOTOR CORP. v. McGOWAN, Collector of Internal Revenue.

### Civ. A. No. 3099.

United States District Court
W. D. New York.
March 26, 1951.

Walter F. Hofheins, Buffalo, N. Y., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and John A. Rees, Sp. Assts. to the Atty. Gen., George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty., Buffalo, N Y., for defendant.

KNIGHT, Chief Judge:

Plaintiff's business was terminated sometime prior to October 20, 1942. At a corporate meeting on October 23, 1942, liquidating trustees were chosen to wind up its affairs.

During 1943, the trustees received income from repossession, collections, and credit balances a total of $1,757.87; and paid out $662.50 as wages, $325 as rent, $382.04 as payroll tax, $111.02 for telephone and supplies, and $474.47 as allowance on accounts receivable, a total of $1,955.03. The difference shows net operating loss during 1943.

On June 9, 1942, plaintiff had outstanding 1,210 shares of common capital stock having a par value of $100 per share. On that date plaintiff purchased 210 shares of its capital stock from J. L. Justice for $23,100. On plaintiff's books this transaction was re-recorded by entries as a debit of $21,000 to treasury stock, a debit of $2,100 premium stock, and a credit of $23,100 to cash.

On October 20, 1942, plaintiff gave up the building space, office, garage, show room and discharged its employees.

On October 31, 1942, the trustees made distribution in liquidation of $80,000, representing $80 per share on all outstanding stock.

On October 20, 1942, an action by Harold Martyr, Inc. Against plaintiff was pending in the Supreme Court of the State of New York to recover approximately $5,000. On December 9, 1943, judgment was entered dismissing that action, and no further proceedings were had. There existed at the time several similar possible claims aggregating in all about $50,000.

Plaintiff's cash balance on January 1, 1942, was $56,091.70, and on December 31, 1942, $55,934.99.

Pending determination of the Martyr action and in contemplation that other similar suits might be brought, the plaintiff until after December 9, 1943, retained on deposit in bank the sum in excess of $50,000.

Between December 9, and 31, 1943, a further liquidating dividend of $60,000 was paid.

As to the carryback from 1942 to 1941, there seems to be no question.

The question here is whether plaintiff is entitled to a carryback to 1941, for assessment of 1943. More specifically, the question is whether plaintiff while in the process of dissolution is entitled to benefits of carryback from that year.

■ There is no question under certain circumstances that a corporation will be entitled to a benefit in that respect. It has been so held in many cases. While there is authority for contrary holding, this is much outweighed by a substantial majority of the opinions. Whether the party while cleaning up the affairs of dissolution is en-titled to this credit depends on the facts in each individual case. Eastern Grain Elevator Corp. v. McGowan, D.C., 95 F.Supp. 40.

[2] In the present action it appears that the plaintiff's trustees were not dilatory and did not unduly delay the performance of their duties in closing up the affairs of the corporation. On taking office, the trustees were faced with the existence of a real pending lawsuit for approximately $5,000, which action was dismissed and judgment entered December 9, 1943. If Martyr had been successful the plaintiff here would have been sued by other parties having similar claims aggregating approximately $50,000. Also, during the year 1943, the trustees received income from repossession, collections and credit balances amounting to $1,757.87, and expended for wages, rent, payroll tax, telephone and supplies and as allowance on accounts receivable, $1,955.03. On January 1, 1943, assets on hand amounted to $92,207.92, and on December 31, 1943, the amount was $30,698.11. Between December 9, and 31, 1943, shortly after the entry of the judgment dismissing the complaint in the Martyr action, the trustees made the second distribution, $60,000.

Although the period of time taken for the dissolution, from October 20, 1942, to December 31, 1943, was in excess of a year, when it is considered that most of the delay was caused by the Martyr action, which was disposed of with reasonable promptness, and the fright that other similar actions might be instituted, it was not an unusually long time for dissolution of the corporation. Bowman v. Glenn, D.C., 84 F. Supp. 200, affirmed, 6 Cir., 184 F.2d 670.

There is every indication that the trustees were forthright and diligent in the performance of their duties during all of that period of time as to the Martyr action, in the collection of accounts and in otherwise liquidating the property of the corporation. It would seem that the trustees might have closed up the affairs, save for the Martyr action, and could have retained the $50,000 in contemplation of other suits until the termination of the Martyr action without holding the liquidation actively open as to other matters and at a loss to the corpora-tion. However, the trustees, in their judg-

ment, saw fit to keep the corporation actively open for a short time with respect to their duties relating particularly to the pending Martyr action and the possibility of other similar actions and did perform some duties during the year 1943, so that under the circumstances plaintiff is entitled to carry back to the tax year 1941 for the year 1943.

Judgment will be allowed for the carry back from 1942 to 1941 as conceded by the defendant, and for the carry back in full from 1943 to 1941, less the credit for the 1942 carry back which amounts will be shown by the recomputation.